Clifford P. Bendau, II (030204)
THE BENDAU LAW FIRM PLLC
6350 East Thomas Road, Suite 330
Scottsdale, Arizona 85251
Telephone: (480) 296-7887
Facsimile: (480) 429-3679
Email: cliffordbendau@bendaulaw.com
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Sarosha Hogan,

               Plaintiff,

vs.

American Multi-Cinema Inc., d/b/a
AMC Theatres Esplanade 14

               Defendant.

Case No.: 2:14-CV-00051-PHX-SMM

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff, Sarosha Hogan ("Plaintiff"), individually, by and through the undersigned attorney and sues the Defendant, American Multi-Cinema, Inc. d/b/a AMC Theatres Esplanade 14 ("Defendant"), and alleges as follows:

1.      At all material times, Plaintiff is an individual residing in Maricopa County, Arizona.

2.      At all material times, Defendant was a corporation duly licensed to transact business in the State of Arizona. Defendant does business, has offices, and/or maintains agents for the transaction of its customary business in Maricopa County, Arizona.

3.      Plaintiff was employed as a bartender by Defendant and was a Tipped employee as defined by the FLSA, 29 U.S.C. § 203(m), from approximately August 1, 2011 through approximately January 31, 2012.

4.      Plaintiff is a covered employee within the meaning of the Fair Labor Standards Act ("FLSA").

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 29 U.S.C. § 201, *et seq.*

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff occurred within this judicial district, and Defendant regularly conducts business in and has engaged in the wrongful conduct alleged herein – and, thus, is subject to personal jurisdiction in – this judicial district.

## BACKGROUND

7.      The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). Under the FLSA, employers must pay their employees a minimum wage. See 29 U.S.C. § 206(a). The FLSA's definition of the term "wage," in turn, recognizes that under certain circumstances, an employer of tipped employees may credit a portion of its employees' tips against its minimum wage obligation, a practice commonly referred to as taking a "tip credit." See id. § 203(m).

-2-

**NATURE OF THE CLAIM**

8.      Defendant owns and/or operates American Multi-Cinema, Inc. d/b/a AMC Theatres Esplanade 14, a movie theater, restaurant, and bar located in Phoenix, Arizona, and throughout the United States.

9.      Plaintiff was employed as a bartender by Defendant and was a Tipped employee as defined by the FLSA at 29 U.S.C. § 203(m), from approximately August 1, 2011 through approximately January 31, 2012.

10.     Rather than pay its tipped employees the applicable state minimum wage, for the time Plaintiff was paid an hourly wage, Defendant imposed a tip credit upon Plaintiff at below the applicable minimum wage.

11.     As a result of Defendant's imposition of a tip credit, Plaintiff was forced to perform labor at an hourly rate that was less than minimum wage of $7.25 per hour.

12.     In addition to tipped labor, Defendant regularly and consistently directed Plaintiff to perform non-tipped labor related to her tipped occupation in excess of twenty percent (20%) of her regular workweek for which Plaintiff was paid at the reduced tip credit rate. As a result, Defendant regularly and consistently paid Plaintiff less than the overall minimum wage for the labor Plaintiff performed during her regular workweek, in willful violation of the FLSA.

13.     In addition to tipped labor, Defendant regularly and consistently directed Plaintiff to perform non-tipped labor unrelated to her tipped occupation, for which Plaintiff was paid at the reduced tip credit rate. As a result, Defendant regularly and consistently paid

Plaintiff less than the overall minimum wage for the labor Plaintiff performed during her regular workweek, in willful violation of the FLSA, 29 U.S.C. § 206(a).

14.    As a result, Plaintiff is entitled to at least the applicable minimum wage for such time worked, without applying the tip credit.

15.    Defendant, individually and/or through an enterprise or agent, directed and exercised control over Plaintiff's work and wages at all relevant times.

16.    Plaintiff's wages were dependent on how Plaintiff was classified as an employee, not on the job(s) performed at the direct of defendant.

17.    Plaintiff, in her work for Defendant, was employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

**COUNT I: FAIR LABOR STANDARDS ACT**
**DUAL JOBS: NON-TIPPED LABOR RELATED TO PLAINTIFF'S TIPPED**
**OCCUPATION PERFORMED IN EXCESS OF 20% OF WORKWEEK**

COMES NOW, Plaintiff, Sarosha Hogan, individually, stating:

18.    At all relevant times, Defendant has been and continues to be an employer and an enterprise engaged in commerce or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 203(d) and (s), respectively.

19.    At all relevant times, Defendant employed Plaintiff, and Plaintiff was employed by Defendant, within the meaning of the FLSA, 29 U.S.C. §§ 203(e) and (g), respectively.

20.    Pursuant to the FLSA, 29 U.S.C. § 203(m), for all time Plaintiff performed labor for Defendant, Defendant imposed a tip credit upon Plaintiff at below the applicable

minimum wage. Thus, Defendant paid Plaintiff at a rate less than the applicable minimum wage of $7.25 per hour.

21.     In addition to tipped labor, Defendant regularly and consistently directed Plaintiff to perform non-tipped labor related to her tipped occupation in excess of twenty percent (20%) of Plaintiff's regular workweek for which Plaintiff was paid at the reduced tip credit rate.

22.     Examples of non-tipped labor related to Plaintiff's tipped occupation include, but are not limited to: preparatory and workplace maintenance tasks such as brewing tea, brewing coffee, cleaning soft drink dispensers and their nozzles, cutting/stocking fruit, bussing theaters, rolling silverware, restocking sauces, cleaning the service stations, and cleaning and stocking restrooms.

23.     Over the course of a given work week, Plaintiff generally worked five (5) shifts per week. For three (3) shifts per workweek, Plaintiff worked a closing shift – i.e., Plaintiff would begin working at approximately 5:00 p.m. and serve customers and perform non-tipped labor until around 12:00 a.m., when they stopped serving liquor, and perform any remaining non-tipped labor until she was permitted to leave. For two (2) shifts per week, Plaintiff worked an opening shift – i.e., Plaintiff would begin working at approximately 9:00 a.m., performed labor until the theater opened to customers at 10:00 a.m., and serve customers and perform non-tipped labor until she was cut from the bar at approximately 5:00 p.m.

24.     Defendant paid its employees, including Plaintiff, at a rate of the full Arizona minimum wage ($7.35 and $7.65 for 2011 and 2012, respectively) minus the maximum allowable tip credit under Arizona law of $3.00 for all hours worked.

25.     Over the course of a given work week, Plaintiff would work approximately 35 hours. During the course of a given workweek, like many – if not all – of the workweeks Plaintiff worked for Defendant, the average of Plaintiff's hourly wages was less than the federal minimum wage. The non-tipped labor related to Plaintiff's tipped occupation, which Plaintiff performed in excess of 20 percent (20%) of the regular workweek, constituted approximately 13.75 hours of the 35 hours Plaintiff worked and is approximated and summarized as follows:

   a.  **Stocking the bar**: Plaintiff stocked the bar at the beginning of every opening shift, and as needed while working each shift. Each time Plaintiff stocked the bar, the process took approximately one (1) hour to complete. This process involved writing a list of needed items, speaking to the manager to get the items, cart loads of the items back to the bar, and prepping every item. At a conservative approximation, over the course of approximately two (2) shifts during which Plaintiff stocked the bar per a given workweek, Plaintiff spent approximately **2 hours stocking the bar**.

   b.  **Cutting and stocking fruit**: Plaintiff cut and stocked fruit every opening shift. The process involved continuously cutting, arranging, and stocking lemons and limes and would take approximately one (1) hour per instance to complete. At a conservative approximation, over the course of

-6-

approximately two (2) shifts cutting and stocking fruit per this workweek, Plaintiff spent approximately **2 hours cutting and stocking fruit**.

c. **Putting away liquor**: Plaintiff was required to put away the liquor after each closing shift she worked. The liquor could not be put away without manager approval, and would not be done until the theater stopped serving alcohol. Each time Plaintiff had to put away the liquor, it would take approximately 20 minutes. At a conservative approximation, over the course of approximately three (3) shifts putting away liquor per this a given workweek, Plaintiff spent at least **1 hour putting away liquor**.

d. **Clean bar and bar seats**: Plaintiff was required to wipe down the bar and the seats several times throughout the day. This process would take approximately thirty (30) minutes and would generally take place between serving customers and after the bar stopped serving liquor. At a conservative approximation, over the course of approximately five (5) shifts during a regular workweek, Plaintiff spent approximately **2.5 hours cleaning the bar and the bar seats.**

e. **Stocking ice**: Plaintiff was required to stock ice at the beginning of each shift she worked, and throughout shifts as needed. Plaintiff would have to cart a bucket, fill it with ice, and cart it back to the bar. This took Plaintiff approximately 15 minutes to complete. At a conservative approximation, over the course of approximately five (5) shifts worked stocking ice per a

given workweek, Plaintiff spent approximately **1 hour, 15 minutes stocking ice**.

  f. **Washing glasses**: Plaintiff was required to wash glasses during every shift. The process involved washing glasses in the three sink system. This was being done constantly throughout the shift, totaling approximately one (1) hour per shift. At a conservative approximation, over the course of approximately five (5) shifts in a regular workweek, Plaintiff spent approximately **5 hours washing glasses**.

  26. In both policy and practice, Defendant regularly and consistently required Plaintiff to perform the above-listed non-tipped labor related to her tipped occupation in excess of twenty percent (20%) of Plaintiff's regular workweek before, during, and after scheduled shifts; before the theater was open to customers; after the theater was closed to customers; while Plaintiff had few to no customers to serve; before serving her first customers; and after being "cut" from serving her last customers.

  27. As a result of Defendant's requirement that Plaintiff perform such non-tipped labor related to her tipped occupation, and in excess of twenty percent (20%) of her regular workweek, while earning the reduced tip credit rate, Plaintiff was engaged in a non-tipped occupation, as defined by the "dual jobs" regulation 29 C.F.R. §§ 531.56(e) and (a) and the Department of Labor Field Operations Handbook §30d00(e), for such work performed during that time. Such work performed by Plaintiff included, but was not limited to, spending more than part of her time cleaning and setting tables and making coffee, and more than occasionally washing dishes or glasses. As a result, Defendant was prohibited

from taking the tip credit for the hours Plaintiff spent working in her non-tipped occupation. Plaintiff is, therefore, entitled, under 29 C.F.R. § 531.56(a), to the overall minimum wage for all time spent performing such non-tipped, dual occupation labor. As such, Defendant paid Plaintiff less than the overall minimum wage for the work Plaintiff performed during her regular workweek, in willful violation of the FLSA, 29 U.S.C. § 206(a).

28.     As such, full minimum wage for such time is owed to Plaintiff for all such non-tipped labor performed during Plaintiff's regular 40-hour workweek.

29.     Although at this stage, Plaintiff is unable to state the exact amount owed for all time worked during the course of her employment, Plaintiff believes that such information will become available during the course of discovery. However, Plaintiff calculates that, for the workweek documented in Paragraph 25, Plaintiff is owed approximately $3.00 per hour for 13.75 hours spent performing non-tipped labor related to her tipped occupation in excess of 20% of her regular workweek, thus totaling $41.25 in unpaid wages for that particular workweek, without taking into account interest, liquidated damages, reasonable attorney fees, and costs. Plaintiff believes and therefore avers that Defendant owes her similar wages for all other pay periods for the duration of her employment. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

30.     Defendant knew that – or acted with reckless disregard as to whether – its failure to pay to Plaintiff the full minimum wage for time spent performing such non-tipped labor, without applying the tip credit, would violate federal and state law, and Defendant was

aware of the FLSA minimum wage requirements during Plaintiff's employment. As such, Defendant's conduct constitutes a willful violation of the FLSA.

31.     Defendant has and continues to willfully violate the FLSA by not paying Plaintiff a wage equal to or greater than minimum wage for time spent performing non-tipped labor related to her tipped occupation in excess of twenty percent (20%) of her regular workweek.

32.     Defendant individually and/or through an enterprise or agent, directed and exercised control over Plaintiff's work and wages at all relevant times.

33.     Plaintiff's wages were dependent on how Plaintiff was classified as an employee, not on the job(s) performed at the direction of Defendant.

34.     As a result of Defendant's paying Plaintiff less than the overall minimum wage ($7.25 in an hour) for work Plaintiff performed during her regular workweek, Defendant violated 29 U.S.C. § 206(a). Plaintiff is therefore entitled to compensation for the difference between wages paid and the full minimum wage at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Sarosha Hogan, individually, requests that this Court enter Judgment against Defendant, American Multi-Cinema, Inc. d/b/a AMC Theatres Esplanade 14, for compensation for unpaid wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorney fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

**COUNT II: FAIR LABOR STANDARDS ACT**
**DUAL JOBS: NON-TIPPED LABOR**
**UNRELATED TO PLAINTIFF'S TIPPED OCCUPATION**

COMES NOW, Plaintiff, Sarosha Hogan, individually, stating:

35.    At all relevant times, Defendant has been and continues to be an employer and an enterprise engaged in commerce or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(a) and (s), respectively.

36.    At all relevant times, Defendant employed Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(e).

37.    Plaintiff brings this action as a former hourly employee of Defendant, who willfully refused to pay a wage to Plaintiff during Plaintiff's employment.

38.    Pursuant to the FLSA, 29 U.S.C. § 203(m), for all time Plaintiff performed labor for Defendant, Defendant imposed a tip credit upon Plaintiff at below the applicable minimum wage. Thus, Defendant paid Plaintiff at a rate less than the federal minimum wage of $7.25 per hour.

39.    In addition to tipped labor, Defendant regularly and consistently directed Plaintiff to perform non-tipped labor unrelated to her tipped occupation over the course of Plaintiff's regular workweek for which Plaintiff was paid at the reduced tip credit rate.

40.    Examples of non-tipped, "dual occupation," labor, unrelated to Plaintiff's tipped occupation, which Plaintiff performed, include, but are not limited to: bussing theaters and cleaning restrooms.

41.    Over the course of a given work week, Plaintiff generally worked five (5) shifts per week. For three (3) shifts per workweek, Plaintiff worked a closing shift – i.e., Plaintiff

would begin working at approximately 5:00 p.m. and serve customers and perform non-tipped labor until around 12:00 a.m., when they stopped serving liquor, and perform any remaining non-tipped labor until she was permitted to leave. For two (2) shifts per week, Plaintiff worked an opening shift – i.e., Plaintiff would begin working at approximately 9:00 a.m., performed labor until the theater opened to customers at 10:00 a.m., and serve customers and perform non-tipped labor until she was cut from the bar at approximately 5:00 p.m.

42.      Defendant paid its employees, including Plaintiff, at a rate of the full Arizona minimum wage ($7.35 and $7.65 for 2011 and 2012, respectively) minus the maximum allowable tip credit under Arizona law of $3.00 for all hours worked.

43.      Over the course of a given work week, Plaintiff would work approximately 35 hours. During the course of a given workweek, like many – if not all – of the workweeks Plaintiff worked for Defendant, the average of Plaintiff's hourly wages was less than the federal minimum wage. The non-tipped labor related to Plaintiff's tipped occupation, which Plaintiff performed over the course of the regular workweek, constituted approximately 7.5 of the 35 hours Plaintiff worked and is approximated and summarized as follows:

  a. **Clean bar and bar seats**: Plaintiff was required to wipe down the bar and the seats several times throughout the day. This process would take approximately thirty (30) minutes and would generally take place between serving customers and after the bar stopped serving liquor. At a conservative approximation, over the course of approximately five (5)

shifts during a regular workweek, Plaintiff spent approximately **2.5 hours cleaning the bar and the bar seats.**

    b. **Washing glasses**: Plaintiff was required to wash glasses during every shift. The process involved washing glasses in the three sink system. This was being done constantly throughout the shift, totaling approximately one (1) hour per shift. At a conservative approximation, over the course of approximately five (5) shifts in a regular workweek, Plaintiff spent approximately **5 hours washing glasses**.

44.    In both policy and practice, Defendant regularly and consistently required Plaintiff to perform the above-listed non-tipped labor unrelated to her tipped occupation over the course of Plaintiff's regular workweek before, during, and after scheduled shifts; before the theater was open to customers; after the theater was closed to customers; while Plaintiff had few to no customers to serve; before serving her first customers; and after being "cut" from serving her last customers.

45.    As a result of Defendant's requirement that Plaintiff perform such non-tipped labor unrelated to her tipped occupation over the course of her regular workweek, while earning the reduced tip credit rate, Plaintiff was engaged in a non-tipped occupation, as defined by the "dual jobs" regulation 29 C.F.R. §§ 531.56(e) and (a) and the Department of Labor Field Operations Handbook §30d00(e), for such work performed during that time. As a result, Defendant was prohibited from taking the tip credit for the hours Plaintiff spent working in her non-tipped occupation. Plaintiff is, therefore, entitled, under 29 C.F.R. § 531.56(a), to the overall minimum wage for all time spent performing such non-tipped, dual

occupation labor. As such, Defendant paid Plaintiff less than the overall minimum wage for the work Plaintiff performed during her regular workweek, in willful violation of the FLSA, 29 U.S.C. § 206(a).

46.     As such, full minimum wage for such time is owed to Plaintiff for all such non-tipped labor performed during Plaintiff's regular 40-hour workweek.

47.     Although at this stage, Plaintiff is unable to state the exact amount owed for all time worked during the course of her employment, Plaintiff believes that such information will become available during the course of discovery. However, Plaintiff calculates that, for the workweek documented in Paragraph 42, Plaintiff is owed approximately $3.00 per hour for 7.5 hours spent performing non-tipped labor unrelated to her tipped occupation over the course of her regular workweek, thus totaling $22.50 in unpaid wages for that particular workweek, without taking into account interest, liquidated damages, reasonable attorney fees, and costs. Plaintiff believes and therefore avers that Defendant owes her similar wages for all other pay periods for the duration of her employment. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

48.     Defendant knew that – or acted with reckless disregard as to whether – its failure to pay to Plaintiff the full minimum wage for time spent performing such non-tipped labor, without applying the tip credit, would violate federal and state law, and Defendant was aware of the FLSA minimum wage requirements during Plaintiff's employment. As such, Defendant's conduct constitutes a willful violation of the FLSA.

49.     Defendant has and continues to willfully violate the FLSA by not paying Plaintiff a wage equal to or greater than minimum wage for time spent performing non-tipped labor unrelated to her tipped occupation over the course of her regular workweek.

50.     Defendant individually and/or through an enterprise or agent, directed and exercised control over Plaintiff's work and wages at all relevant times.

51.     Plaintiff's wages were dependent on how Plaintiff was classified as an employee, not on the job(s) performed at the direction of Defendant.

52.     As a result of Defendant's paying Plaintiff less than the overall minimum wage ($7.25 in an hour) for work Plaintiff performed during her regular workweek, Defendant violated 29 U.S.C. § 206(a). Plaintiff is therefore entitled to compensation for the difference between wages paid and the full minimum wage at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Sarosha Hogan, individually, requests that this Court enter Judgment against Defendant, American Mult-Cinema, Inc. d/b/a AMC Theatres Esplanade 14, for compensation for unpaid wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorney fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 21st Day of October, 2014.

THE BENDAU LAW FIRM, PLLC

By: /s/ *Clifford P. Bendau, II*
Clifford P. Bendau, II
Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the Court via CM/ECF system on this 21st Day of October, 2014, which will send notice of electronic filing to the following counsel of record:

Tracy A. Miller
Alexandra J. Gill
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 E. Camelback Rd., Ste. 800
Phoenix, AZ 85016

By: /s/ *Clifford P. Bendau, II*
Clifford P. Bendau, II
Attorney for Plaintiff